Fred W. Schwinn (SBN 225575)
CONSUMER LAW CENTER, INC.
12 South First Street, Suite 1014
San Jose, California  95113-2418
Telephone Number: (408) 294-6100
Facsimile Number: (408) 294-6190
Email Address: fred.schwinn@sjconsumerlaw.com

Balám O. Letona (SBN 229642)
LAW OFFICE OF BALÁM O. LETONA, INC.
1347 Pacific Avenue, Suite 203
Santa Cruz, California 95060-3940
Telephone Number: (831) 421-0200
Facsimile Number: (831) 621-9659
Email Address: letonalaw@gmail.com

Sara J. Lipowitz (SBN 209163)
LAW OFFICE OF SARA J. LIPOWITZ
303 Potrero Street, Suite 27
Santa Cruz, California 95060-2782
Telephone Number: (831) 427-0546
Facsimile Number: (831) 427-0530
Email Address: saral@lipowitzsolutions.com

Attorneys for Plaintiff
CARLOS H. PEREZ

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| CARLOS H. PEREZ,<br><br>                              Plaintiff,<br><br>        v.<br><br>GMAC MORTGAGE USA CORPORATION, A/K/A GMAC MORTGAGE, LLC, a Delaware corporation;  MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware corporation;  EXECUTIVE TRUSTEE SERVICES, LLC, a Delaware limited liability company;  GREENPOINT MORTGAGE FUNDING, INC., a New York corporation;  ANDRUS & ASSOCIATES, | Case No. C08-01972-JW-HRL<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CERTIFICATION FOR INTERLOCUTORY APPEAL**<br><br>[28 U.S.C. § 1292(b)]<br><br>Date:          February 20, 2009<br>Time:          9:00 a.m.<br>Judge:         Honorable James Ware<br>Courtroom:     8<br>Place:         280 South First Street<br>               San Jose, California |

INC., a California corporation;   PAUL RAY
ANDRUS, individually and in his official
capacity;   HOMECOMINGS FINANCIAL,
LLC, a Delaware limited liability company;
COUNTRYWIDE HOME LOANS, INC., a
New York corporation;   SOUTH PACIFIC
FINANCIAL CORPORATION, a California
corporation;   RESIDENTIAL MORTGAGE
CAPITAL, D/B/A FIRST SECURITY LOAN;
a California corporation;   JAMES JOHN
CHAPMAN, individually and in his official
capacity;   LUIS G. BARRIOS, individually and
in his official capacity;   ELIZABETH P.
CAMPOS, individually and in her official
capacity; and DOES 1 through 20, inclusive,

Defendants.

COMES NOW the Plaintiff, Carlos H. Perez, by and through his attorneys, Fred W. Schwinn,

Balám O. Letona and Sara J. Lipowitz, and submits his Memorandum of Points and Authorities in

Support of Motion for Certification for Interlocutory Appeal filed herein.

* * *

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
CERTIFICATION FOR INTERLOCUTORY APPEAL
Case No. C08-01972-JW-HRL

# TABLE OF CONTENTS

I.  INTRODUCTION..................................................................................................................1

II. FACTS OF THE CASE........................................................................................................2

III. ARGUMENTS AND AUTHORITIES................................................................................5

    A.  Standard for Certification of Interlocutory Appeals.................................................5

    B.  The Question Presents a Controlling Issue of Law...................................................6

    C.  There is Substantial Ground for Difference of Opinion............................................7

        1.  Mr. Perez Retains an Interest in the Refinanced Transaction....................10

        2.  A Majority of Federal Circuits and District Courts Interpret
        the TILA to Allow a Right of Rescission for Refinanced Home Loans.........................11

        3.  California State Courts Have Rejected *King*..............................................12

        4.  The Rescission Provisions of the TILA Must Be Construed
        Liberally in Favor of the Borrower........................................13

    D.  Appellate Resolution Would Materially Advance the
    Ultimate Termination of the Litigation.................................................15

IV. A STAY OF PROCEEDINGS PENDING APPEAL IS WARRANTED.......................16

V.  CONCLUSION....................................................................................................................17

---

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
CERTIFICATION FOR INTERLOCUTORY APPEAL
Case No. C08-01972-JW-HRL

# TABLE OF AUTHORITIES

## CASES

*Barrett v. JP Morgan Chase Bank, N.A.*, 445 F.3d 874 (6th Cir. 2006)....................................8, 10, 11, 12

*Brown v. Credithrift of America Consumer Discount Co. (In re Brown)*,
106 B.R. 852 (Bankr. E.D. Pa. 1989).................................................................................15

*Caterpillar Inc. v. Lewis*, 519 U.S. 61, 117 S.Ct. 467, 136 L.Ed.2d 437 (1996).....................................6

*Charles v. Krauss Co., Ltd.*, 572 F.2d 544 (5th Cir. 1978).................................................................15

*City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882 (9th Cir. 2001)...................6

*Clanahan v. McFarland Unified Sch. Dist.*,
2007 U.S. Dist. LEXIS 65801 (E.D. Cal. August 22, 2007)......................................................6

*Clay v. Johnson*, 22 F. Supp. 2d 832 (N.D. Ill. 1998)..........................................................................14

*Consumer Product Safety Commission v. GTE Sylvania*,
447 U.S. 102, 100 S. Ct. 2051, 64 L. Ed. 2D 766 (1980)........................................................10

*Credit Suisse v. U.S. District Ct.*, 130 F.3d 1342 (9th Cir. 1997).........................................................6

*Eby v. Reb Realty*, 495 F.2d 646 (9th Cir. 1974)..................................................................................14

*Filtrol Corp. v. Kelleher*, 467 F.2d 242 (9th Cir. 1972)........................................................................16

*Gill v. Mid-Penn Consumer Discount Co.*, 671 F.Supp. 1021 (E.D. Pa. 1987)....................................12

*Griggs v. Provident Consumer Discount Co.*, 680 F.2d 927 (3rd Cir. 1982),
*vacated on other grounds*, 459 U.S. 56, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982)........................15

*Hadjipateras v. Pacifica, S.A.*, 290 F.2d 697 (5th Cir. 1961).............................................................16

*Handy v. Anchor Mortgage Corporation*, 464 F.3d 760 (7th Cir. 2006).................................8, 10, 12

*In re Cement Antitrust Litig. (MDL No. 296)*, 673 F.2d 1020 (9th Cir. 1982),
*aff'd*, 459 U.S. 1190, 103 S. Ct. 1172, 75 L. Ed. 2D 425 (1983).........................................6, 15

*In re McElvany*, 98 B.R. 237 (Bankr. W.D. Pa. 1989).........................................................................14

*In re Norris*, 138 B.R. 467 (E.D. Pa. 1992)........................................................................................15

*In re Porter*, 961 F.2d 1066 (3rd Cir. 1992)........................................................................7, 15

*In re Ralls v. Bank of New York*, 230 B.R. 508 (E.D. Pa. 1999).............................................15

*In re Wright*, 127 B.R. 766 (Bankr. E.D. Pa. 1991)...............................................................12

*Jackson v. Grant*, 890 F.2d 118 (9th Cir. 1989)...............................................................14, 15

*Kaiser Aluminum & Chemical Corp. v. Bonjorno*,
494 U.S. 827, 110 S. Ct. 1570, 108 L. Ed. 2D 842, 852 (1990)...............................................10

*King v. California*, 784 F.2d 910 (9th Cir. 1986)...............................................1, 8, 10, 12, 14

*Mayfield v. Vanguard Savings & Loan Ass'n*, 710 F. Supp. 143 (E.D. Pa. 1989)....................12

*McIntosh v. Irwin Union Bank and Trust Co.*, 215 F.R.D. 26 (D. Mass. 2003).....................9, 12

*McKenna v. First Horizon Home Loan Corporation*, 429 F. Supp. 2d 291 (D. Mass. 2006),
*rev'd on other grounds*, 475 F.3d 418 (1st Cir. 2007)..........................................................9, 12

*Nichols v. Mid-Penn Consumer Discount Co.*,
1989 U.S. Dist. LEXIS 4796 (E.D. Pa. Apr. 28, 1989).............................................................12

*Pacific Shore Funding v. Zoran Lozo*,
138 Cal. App. 4th 1342 (Cal. App. 2nd Dist. 2006).......................................................8, 12, 13

*Payton v. New Century Mortgage Corp.*,
2003 U.S. Dist. LEXIS 18366 (N.D. Ill. Oct. 10, 2003)............................................................12

*Pulphus v. Sullivan*, 2003 U.S. Dist. LEXIS 7080 (N.D. Ill. April 25, 2003)............................12

*Quenzer v. Advanta Mortg. Corp. USA*,  288 B.R. 884 (D. Kan. 2003)...................................13

*SCM Corporation v. Xerox Corporation*, 474 F. Supp. 589 (D. Conn. 1979)............................7

*Semar v. Platte Valley Fed. Sav. & Loan Ass'n*, 791 F.2d 699 (9th Cir. 1986)....................14, 15

*Shepeard v. Quality Siding and Window Factory, Inc.*, 730 F.Supp. 1295 (D. Del. 1990).........14

*Shroder v. Suburban Coastal Corp.*, 729 F.2d 1371 (11th Cir. 1984).....................................15

*Smith v. Fidelity Consumer Discount Co.*, 898 F.2d 896 (3rd Cir. 1990)............................14, 15

*United States v. Woodbury*, 263 F.2d 784 (9th Cir. 1959).......................................................6

- iii -
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
CERTIFICATION FOR INTERLOCUTORY APPEAL
Case No. C08-01972-JW-HRL

1

STATUTES

2

15 U.S.C. § 1601(a)............................................................................................................7

3

15 U.S.C. § 1602(h)...........................................................................................................3

4

5

15 U.S.C. § 1635(a)......................................................................................................8, 10

6

15 U.S.C. § 1635(b)....................................................................................1, 5, 11, 13

7

15 U.S.C. § 1635(e)...........................................................................................................9

8

15 U.S.C. 1635(f)............................................................................................................13

9

15 U.S.C. § 1640(a).........................................................................................................14

10

28 U.S.C. § 1292(b)..................................................................................................1, 5, 6

11

FEDERAL REGULATIONS

12

13

12 C.F.R. § 226.2(a)(11)....................................................................................................3

14

12 C.F.R. § 226.15(a)(3)....................................................................................................1

15

12 C.F.R. § 226.18(d).......................................................................................................14

16

17

12 C.F.R. § 226.23......................................................................................................9, 10

18

12 C.F.R. § 226.23(a)(3)..............................................................................................1, 13

19

12 C.F.R. § 226.23(d)(2)...................................................................................................5

20

FRB Commentary on 12 C.F.R. § 226.23(a)(2).................................................................9

21

22

23

24

25

26

27

28

---

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
CERTIFICATION FOR INTERLOCUTORY APPEAL
Case No. C08-01972-JW-HRL

# I.  INTRODUCTION

Plaintiff, CARLOS H. PEREZ (hereinafter "Mr. Perez"), respectfully requests that this Court certify for immediate appellate review those portions of its Order Granting in Part and Denying in Part Defendants' Motions to Dismiss (Doc. 88) which dismissed Mr. Perez's Truth in Lending Act rescission claims (First Cause of Action) against Defendants, SOUTH PACIFIC FINANCIAL CORPORATION, HOMECOMINGS FINANCIAL, LLC, RESIDENTIAL MORTGAGE CAPITAL, and JAMES JOHN CHAPMAN (the "Order").  Certification is appropriate where, as here, an order (1) involves a controlling question of law; (2) as to which there is substantial ground for difference of opinion; and (3) an immediate appeal . . . may materially advance the ultimate termination of the litigation.[1]

The question at issue is narrow: Whether the refinancing of a home mortgage cuts off the borrower's right to rescind the loan under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1635(b) and Regulation Z, 12 C.F.R. §§ 226.15(a)(3) and 226.23(a)(3).  TILA and its accompanying regulations provide a complete statutory scheme for the regulation of consumer credit transactions, including the rescission of loans that violate its requirements.  However, in a case 23 years ago, *King v. California*,[2] the Ninth Circuit mentioned in passing that refinanced loans could not be rescinded under the TILA because the Deed of Trust securing the refinanced loan is superseded by the later loan. The *King* court did not attempt to reconcile this radical conclusion with the statutory scheme established by TILA and Regulation Z.  This Court was bound and, therefore, relied on *King* in dismissing the portion of Mr. Perez's First Amended Complaint seeking TILA rescission against Defendants, SOUTH PACIFIC FINANCIAL CORPORATION, HOMECOMINGS FINANCIAL, LLC, RESIDENTIAL MORTGAGE CAPITAL, and JAMES JOHN CHAPMAN.

---

[1]  28 U.S.C. § 1292(b).
[2]  784 F.2d 910 (9th Cir. 1986).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
CERTIFICATION FOR INTERLOCUTORY APPEAL
Case No. C08-01972-JW-HRL

Mr. Perez submits that the Order meets each of the three grounds for certification for interlocutory review as set forth in 28 U.S.C. § 1292(b).  First, the Order presents a controlling question of law, in that a rejection of *King* or a modified interpretation of the rescission provisions in the TILA and Regulation Z by the Ninth Circuit would require reversal of the part of the Order that essentially dismissed Defendant, HOMECOMINGS FINANCIAL, LLC, from the case.  Second, this question presents a substantial ground for difference of opinion, as evidenced by the fact that other circuit and district courts who have examined the same issue have come to a completely opposite conclusion.  Lastly, immediate appeal would materially advance the ultimate termination of the litigation, in that reversal or modification of the *King* case would allow Mr. Perez to litigate all claims against all Defendants promptly and alleviate the prejudice to his interests that would result from an appeal at the end of the case. Furthermore, reversal or modification of the *King* case would restore much needed consumer protections to  thousands of homeowners struggling during the current foreclosure crisis.

## II.  FACTS OF THE CASE

Mr. Perez is a 71-year-old, frail, elderly man, widowed, who owns his home and has resided at 551 Loumena Lane, San Jose, California for the past 28 years.[3]  Mr. Perez suffers from health problems and conditions associated with aging and has difficulties with his hearing and vision.  *Id*.  It is believed that Mr. Perez also suffers from a mild form of dementia.  *Id*.  Mr. Perez is on a fixed income of approximately $800 per month, supplemented by the Social Security Disability benefits received by his mentally disabled adult son, for whom Mr. Perez is the primary caregiver, and by periodic donations he receives from his family members.  *Id*.  Mr. Perez is a natural Hispanic who traces his national origin to Guatemala.  *Id*.  At all relevant times, Mr. Perez spoke broken English and was not fluent in reading or writing in the English language.  *Id*.  Accordingly, all oral communications occurred in the Spanish

---

[3]  Complaint (Doc. 1) ¶ 8.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
CERTIFICATION FOR INTERLOCUTORY APPEAL
Case No. C08-01972-JW-HRL

language, except where specifically alleged otherwise. *Id*. Mr. Perez is a natural person and a "consumer" within the meaning of 15 U.S.C. § 1602(h) and Regulation Z § 226.2(a)(11). *Id*.

Mr. Perez, as a senior citizen with limited education and income but substantial equity in his home, was a prime target for predatory mortgage lenders and brokers.[4] Because of his age, deteriorating mental faculties and inability to read and comprehend financial transactions written in the English language, he became a victim of a predatory lending practice known as "flipping."[5] Unscrupulous mortgage brokers and lenders induced Mr. Perez to repeatedly refinance loans on his home with interest-only loans, charging high points and fees each time. *Id*. As a result of these predatory lending practices, over the course of a few short years his house payments have increased substantially to the point where he can no longer make them, the total debt owed on his home exploded to over $600,000 and the equity in his home has been reduced as a result. *Id*.

Sometime in or about March 2005, Mr. Perez was solicited by Defendant, LUIS G. BARRIOS, an unlicensed residential mortgage salesperson, to refinance his existing home loans.[6] BARRIOS negotiated with Mr. Perez in Spanish, but all subsequent loan documents were in English.[7] Mr. Perez and his wife, who was alive at the time, were unsophisticated and unable to consummate real estate transactions without the assistance of real estate professionals.[8] Accordingly, Mr. Perez and his wife relied on BARRIOS when entering the loan transactions at issue in this case.[9] Based on representations made by BARRIOS and the loan documents provided by SOUTH PACIFIC, Mr. Perez agreed to finance his primary residence through SOUTH PACIFIC.[10] Mr. Perez was told he was being sold a senior home loan with a low interest rate of 1% and that the interest rate was fixed for the first five (5)

---

[4] *Id*. at ¶ 41.
[5] *Id*. at ¶ 42.
[6] *Id*. at ¶ 43.
[7] *Id*. at ¶ 46.
[8] *Id*. at ¶ 44.
[9] *Id*. at ¶¶ 44, 49 and 51.
[10] *Id*. at ¶ 71.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
CERTIFICATION FOR INTERLOCUTORY APPEAL
Case No. C08-01972-JW-HRL

years of the loan.  *Id*.  He was also led to believe that the loan would not negatively amortize if he made payments based on the amounts reflected in a written payment schedule provided to him by SOUTH PACIFIC.  *Id*.  The loans actually were adjustable rate mortgages with a low, fixed payment but not a low, fixed interest rate.[11]  Unbeknownst to Mr. Perez, the actual interest rate he was charged was not fixed, was not the low teaser rate promised by BARRIOS and stated in the loan documents, and was considerably higher than going market rates.  *Id*.  After purchasing the ARM loan products, Mr. Perez did not receive the 1% interest rate, or at best received it for only a single month.  *Id*.  SOUTH PACIFIC immediately increased the interest rate they charged Mr. Perez, and the newly increased interest charges incurred over and above the fixed interest payment rate were added to the principal balance on the home loan in ever-increasing increments, substantially reducing the equity in Mr. Perez's home.  *Id*.  SOUTH PACIFIC concealed and failed to disclose that the loans were designed to produce negative amortization.[12]  They also concealed and failed to disclose the fact that the loans contained a substantial prepayment penalty.[13]  Soon after closing the transactions, SOUTH PACIFIC assigned the loans to Defendant, HOMECOMINGS and now dismissed Defendant, COUNTRYWIDE.

Within a few months after entering into the SOUTH PACIFIC loans, but in any event no later than November 2005, BARRIOS began aggressively calling Mr. Perez and visiting him at his home in an attempt to convince Mr. Perez to refinance his home loans again.[14]  Between November 2005 and February 2006, BARRIOS would either call or visit Mr. Perez at his home two to three times per week.  *Id*.  Each time BARRIOS would call or visit, Mr. Perez would tell BARRIOS that he did not want to refinance his home loans.  *Id*.  During this period, BARRIOS repeatedly told Mr. Perez that he could arrange new home loans allowing Mr. Perez to pay off his credit card debt and reduce his total monthly

---

[11]  *Id*. at ¶ 72.
[12]  *Id*. at ¶ 73.
[13]  *Id*. at ¶ 68.
[14]  *Id*. at ¶ 98.

- 4 -
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
CERTIFICATION FOR INTERLOCUTORY APPEAL
Case No. C08-01972-JW-HRL

debt payments.  *Id*.  BARRIOS also told Mr. Perez that he could still obtain an interest rate of 1% that would be fixed for five (5) years.  *Id*.

Almost immediately after the loan closed, BARRIOS began to pressure Mr. Perez to refinance the loan again.[15]  This pressure was ultimately successful; Mr. Perez again refinanced, into two new loans with similarly disadvantageous terms as the former loans.  As before, the terms of the new loans were substantially and materially misrepresented.

On or about March 22, 2008, Mr. Perez, through his attorney, notified Defendants, that he was exercising his right to rescind the senior loan transaction pursuant to the TILA and Regulation Z.[16]  On or about March 31, 2008, Mr. Perez, through his attorney, notified the Defendants that he was exercising his right to rescind the junior loan transaction pursuant to the TILA and Regulation Z.[17]  More than 20 calendar days have passed between the filing of this action and Defendants receiving notice of Mr. Perez's intent to rescind the loan transactions.  Defendants have failed to return to Mr. Perez any money or property given by Mr. Perez to anyone in connection with the loan transactions, as required by 15 U.S.C. § 1635(b) and Regulation Z § 226.23(d)(2).[18]

## III.  ARGUMENTS AND AUTHORITIES

### A.    Standard for Certification of Interlocutory Appeals

The controlling statute is found at 28 U.S.C. § 1292(b) which provides in relevant part as follows:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he

---

[15] *Id.* at ¶ 98.
[16] *Id.* at ¶ 88.
[17] *Id.* at ¶ 90.
[18] *Id.* at ¶¶ 95 and 96.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
CERTIFICATION FOR INTERLOCUTORY APPEAL
Case No. C08-01972-JW-HRL

shall so state in writing in such order.

"Section 1292(b) provides for interlocutory appeals from otherwise not immediately appealable orders, if conditions specified in the section are met, the district court so certifies, and the court of appeals exercises its discretion to take up the request for review."[19]  "Section 1292(b) requires a two step application process; step one is before the district court for certification of the order, and step two is before the court of appeals for permission to appeal.  The certification is discretionary within the power of the trial judge.  Indeed, the appellate court will not consider the appeal absent written certification by the district court."[20]  "Thus, a party must obtain certification from both the district court and the court of appeals to bring an interlocutory appeal."[21]

"Section 1292(b) imposes three criteria that must be met before a district court may certify an interlocutory appeal: the order must state '(1) that there is a controlling question of law, (2) that there is substantial grounds for difference of opinion, and (3) that an immediate appeal may materially advance the ultimate termination of the litigation.'"[22]

The limited question for which Mr. Perez seeks an interlocutory appeal satisfies the factors for certification pursuant to 28 U.S.C. § 1292(b).

**B.    The Question Presents a Controlling Issue of Law**

A controlling question of law, for the purposes of 28 U.S.C. § 1292(b), is one in which the resolution of the issue on appeal could materially affect the outcome of litigation in the district court.[23] The question does not have to be dispositive to be controlling.[24]

---

[19]  *Clanahan v. McFarland Unified Sch. Dist.*, 2007 U.S. Dist. LEXIS 65801 (E.D. Cal. August 22, 2007) at *2-3, *citing, Caterpillar Inc. v. Lewis*, 519 U.S. 61, 74 n. 10, 117 S.Ct. 467, 136 L.Ed.2d 437 (1996).
[20]  *Id., citing, Credit Suisse v. U.S. District Ct.*, 130 F.3d 1342, 1346 (9th Cir. 1997).
[21]  *Id., citing, City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882 (9th Cir. 2001).
[22]  *Id., citing, In re Cement Antitrust Litig. (MDL No. 296)*, 673 F.2d 1020, 1026 (9th Cir. 1982), *aff'd*, 459 U.S. 1190, 103 S. Ct. 1172, 103 S. Ct. 1173, 75 L. Ed. 2d 425 (1983).
[23]  *In re Cement*, 673 F.2d 1020, 1026 (9th Cir. 1982).
[24]  *United States v. Woodbury*, 263 F.2d 784, 787 (9th Cir. 1959).

- 6 -
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
CERTIFICATION FOR INTERLOCUTORY APPEAL
Case No. C08-01972-JW-HRL

> For example, both the Senate and House reports on the bill that became §
> 1292(b) illustrate as an example of an appropriate use of the new
> provision a ruling allowing or refusing joinder of a third-party
> defendant. . . . A ruling against impleading a third-party defendant
> determines no subsequent issues between the original parties.  This
> example also indicates that whether an immediate appeal may materially
> advance the ultimate termination of the litigation can properly turn on
> pragmatic considerations.  The House Report described as a proper case
> for interlocutory appeal "cases involving third party defendants where
> there would be no reason for continuing the actions if the third parties
> could not be held liable."[25]

Similar to the situation described in *SCM Corporation*, in the case at bar the question of whether the TILA covers refinanced loans is ultimately a question of whether Defendant, HOMECOMINGS FINANCIAL, LLC, should be a party and potentially held liable for TILA violations --- including being required to refund to Mr. Perez the interest, fees and prepayment penalties that it received.   An appellate decision now will materially affect the outcome of the litigation by resolving this question of liability early in the case.

**C.     There is Substantial Ground for Difference of Opinion**

The purpose of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA") is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices."[26]  TILA accomplishes this purpose not simply through requiring lenders to provide disclosures, but also imposing strict liability on lenders who make misrepresentations or mislead consumers.[27]  TILA and its accompanying regulations provide a complete statutory scheme for the regulation of consumer credit transactions.

Most courts that have considered whether the TILA allows for rescission of refinanced loans

---

[25] *SCM Corporation v. Xerox Corporation*, 474 F. Supp. 589, 594 (D. Conn. 1979) (citations omitted).
[26] 15 U.S.C. § 1601(a).
[27] *In re Porter*, 961 F.2d 1066, 1078 (3rd Cir. 1992).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
CERTIFICATION FOR INTERLOCUTORY APPEAL
Case No. C08-01972-JW-HRL

have refused to follow *King*, including the Sixth and Seventh Circuit Courts of Appeal, many district courts around the country and at least one California state court.[28]  In fact, the facts in the case at bar at more similar to the facts in these cases than to the facts in *King*.

In *King*, the Plaintiff, Gwendolyn King, sued a loan broker, the ironically-named Integrity, to rescind a series of loan transactions that allegedly violated the Truth in Lending Act and the Civil Rights Act.[29]  She also sued the State of California under a rather confused theory that by doing so she could render the actions of the designated trustee to the trust deeds null because the trustee, R&T Financial Servicing Co., lacked corporate status at the time of the transactions.[30]  The district court dismissed her complaint with prejudice because King repeatedly moved for continuances and then failed to make required appearances.[31]  The Ninth Circuit upheld the district court's ruling on King's federal claims on several grounds: first, that the court rightly dismissed all of King's federal claims except two due to untimely filings, missed appearances and/or failure to state a claim; and second, that King's remaining federal claims were barred by the statute of limitations and could not be revived under theories of continuing violations or equitable tolling.[32]  The *King* court made several legal holdings against the Plaintiff on many grounds, but the proposition that a refinanced loan is not covered by the TILA was not one of them.

The TILA, Regulation Z, and the Board commentary allow rescission of a refinanced home loans.  The TILA, 15 U.S.C. § 1635(a), creates the right to rescind for any consumer credit transaction in which a security interest is or will be retained or acquired in any property used as the principal dwelling of the person to whom credit is extended.  The right of rescission is in effect until midnight of

---

[28]  *Handy v. Anchor Mortgage Corporation*, 464 F.3d 760, 765 (7th Cir. 2006),  *Barrett v. JP Morgan Chase Bank, N.A.*, 445 F.3d 874, 878 (6th Cir. 2006);  *Pacific Shore Funding v. Zoran Lozo*, 138 Cal. App. 4th 1342, 1353 (Cal. App. 2nd Dist. 2006).
[29]  *King*, 784 F.2d at 911.
[30]  *Id.*
[31]  *Id.*
[32]  *Id.* at 916.

- 8 -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
CERTIFICATION FOR INTERLOCUTORY APPEAL
Case No. C08-01972-JW-HRL

the third business day after the transaction is consummated; this right is extended for up to three years if the creditor does not provide all required material disclosures of the credit terms.[33]

Limitations and exceptions to the right to rescind are clearly delineated in the TILA.  15 U.S.C. § 1635(e) states that rescission is not available for a transaction used to finance the initial construction of a dwelling, a transaction which constitutes a refinancing or consolidation (with no new advances) of the principal balance then due and any accrued and unpaid finance charges of an existing extension of credit by the same creditor secured by an interest in the same property; a transaction in which an agency of a State is the creditor; or advances under a preexisting open end credit plan if a security interest has already been retained or acquired and such advances are in accordance with a previously established credit limit for such plan.

Regulation Z and the Federal Reserve Board Staff Commentary further explain the right of rescission:

> . . . the right to rescind automatically lapses on the occurrence of the earliest of the following three events:
>
> The expiration of three years after the consummation of the transaction;
>
> Transfer of all the consumer's interest in the property;
>
> Sale of the consumer's interest in the property, including a transaction in which the consumer sells the dwelling and takes back a purchase money note and mortgage or retains legal title through a device such as an installment sale contract.[34]

Congress and the Federal Reserve Board spent much time and effort outlining the scope of the right of rescission.  The TILA and "the implementing regulations of TILA never state that paying off a loan in full cuts off unexpired rescission rights."[35]  Only the expiration of the statute of limitations,

---

[33] 12 C.F.R. § 226.23.
[34] FRB Commentary § 226.23(a)(2).
[35] *McKenna v. First Horizon Home Loan Corporation*, 429 F. Supp. 2d 291, 314 (D. Mass. 2006), *reversed on other grounds*, 475 F.3d 418 (1st Cir. 2007), quoting *McIntosh v. Irwin Union Bank and Trust Co.*, 215 F.R.D. 26, 31 (D. Mass.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
CERTIFICATION FOR INTERLOCUTORY APPEAL
Case No. C08-01972-JW-HRL

1  transfer of all of the consumer's interest in the property or sale of the property extinguishes the right

2  completely.[36]  None of the exceptions to the right of rescission apply in the case at bar.

3       The statement in *King* that this Court has relied on in dismissing the first cause of action in Mr.

4  Perez's First Amended Complaint fails to apply the provisions of TILA and Regulation Z.  *King* merely

5  states, in conclusory fashion, "The loan of March 1981 cannot be rescinded, because there is nothing to

6  rescind.  King refinanced that loan in November 1981, and the deed of trust underlying the March 1981

7  loan has been superseded."[37]  Federal courts are required to follow the rules of statutory construction

8  laid down by the United States Supreme Court, which has stated, "the starting point for interpretation of

9  [a federal statute] is the language of the statute itself.  Absent a clearly expressed legislative intention to

10  the contrary, that language must ordinarily be regarded as conclusive."[38]  Absent analysis of how this

11  statement fits into the detailed statutory scheme outlined in TILA and Regulation Z, these lines in *King*

12  must be reviewed by the Ninth Circuit.

13       **1.     Mr. Perez Retains an Interest in the Refinanced Transaction**

14       Relying on *King*, this Court held that Mr. Perez is not entitled to rescind the refinanced loans

15  because when the borrower refinances the loan, the deed of trust securing the obligation has been

16  superseded.[39]  However, TILA and Regulation Z refer to a right to rescind the "transaction," not simply

17  the security interest.[40]  When the transaction is rescinded, the obligor "is not liable for any finance or

18  other charge, and any security interest given by the obligor . . . becomes void upon such a rescission.

19  Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money

---

2003).

[36]  12 C.F.R. § 226.23.

[37]  *King*, 784 F.2d at 913.

[38]  *Kaiser Aluminum & Chemical Corp. v. Bonjorno,* 494 U.S. 827, 835, 110 S. Ct. 1570, 1575, 108 L. Ed. 2d 842, 852 (1990); *Consumer Product Safety Commission v. GTE Sylvania,* 447 U.S. 102, 108, 100 S. Ct. 2051, 2056, 64 L. Ed. 2d 766, 773 (1980).

[39]  *King*, 784 F.2d at 913.

[40]  15 U.S.C. § 1635(a); *Handy*, 464 F.3d at 765;  *Barrett,* 445 F.3d at 878.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
CERTIFICATION FOR INTERLOCUTORY APPEAL
Case No. C08-01972-JW-HRL

or property given as earnest money, down payment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction."[41]   The minority of courts that have followed the reasoning of *King* appear to have ignored the fact that in rescission the creditor is required not just to relinquish the security interest, but also to return accrued interest, points, brokers' fees, closing costs, and other statutorily identified finance charges incurred in the transaction.[42]   The remedy of rescission returns the parties to their positions before the contract was made.  *Id*.  Since Defendants in this case have not returned these charges, there is still something left from the transaction to rescind.

### 2.   A Majority of Federal Circuits and District Courts Interpret the TILA to Allow a Right of Rescission for Refinanced Home Loans

Most courts have not followed *King*, including the Sixth and Seventh Circuits and many district courts.  The facts of those decisions are more similar to those of the case at bar that the facts in *King*.  In *Barrett v. JP Morgan Chase Bank, N.A.*,[43] William and Sandra Barrett refinanced their home several times, first with Bank One and then with another lender.  Two years after Bank One had released its last security interest in the Barretts' home, the Barretts sought rescission under TILA from Bank One for two loans.[44]  Bank One claimed rescission was not possible because, "there was nothing left to rescind after Bank One had released all security interests it had once held in [the Barretts'] property."  The court disagreed, stating:

> . . . [TILA and Regulation Z] refer to a "right to rescind the *transaction*," not just a right to rescind the security interest. 15 U.S.C. § 1635(a) (emphasis added) . . . And, most importantly, § 1635(b) not only allows a rescinding borrower to void the security interest but also requires the creditor to return other fees generated by the loan transaction, namely

---

[41]  15 U.S.C. § 1635(b).
[42]  *Barrett* at 878.
[43]  *Id*. at 874.
[44]  *Id*. at 875.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
CERTIFICATION FOR INTERLOCUTORY APPEAL
Case No. C08-01972-JW-HRL

"any money or property given as earnest money, downpayment, or otherwise."[45]

The *Barrett* court also analyzed the TILA's exceptions to the right of rescission, concluding that refinancing was not one of them and none of the others applied to the Barretts' situation.[46]

Similarly, in *Handy v. Anchor Mortgage Corporation*,[47] Plaintiff Handy sought to rescind a home loan extended by Anchor Mortgage Company, which was later refinanced.  The court agreed with the reasoning of the Sixth Circuit, stating that "the remedies associated with rescission remain available even after the subject loan has been paid off and, more generally, that the right to rescission 'encompasses a right to return to the *status quo* that existed before the loan.'"[48]

Though district courts have not universally followed the Sixth and Seventh Circuits' reasoning, most have found that refinanced loans are subject to TILA rescission.[49]

### 3.   California State Courts Have Rejected *King*

The *King* case was explicitly rejected in a case of first impression in California, *Pacific Shore Funding v. Zoran Lozo*.[50]  In that case, Zoran and Monika Lozo attempted to rescind a loan transaction under the TILA based on the lender's failure to provide proper disclosures.[51]  The lender, Pacific Shores Funding, sued the Lozos and obtained summary judgment against them in the trial court based on the *King* case.[52]

---

[45]  *Id*. at 879.
[46]  *Id*.
[47]  464 F.3d 760 (7th Cir. 2006).
[48]  *Handy*, 464 F.3d at 765, *quoting Barrett*, 445 F.3d at 880.
[49]   *See McKenna v. First Horizon Home Loan Corp.*, 429 F. Supp. 2d 291 (D. Mass 2006);  *McIntosh v. Irwin Union Bank and Trust Co.*, 215 F.R.D. 26 (D. Mass. 2003);  *Payton v. New Century Mortgage Corp.*, 2003 U.S. Dist. LEXIS 18366 (N.D. Ill. Oct. 10, 2003);  *Pulphus v. Sullivan*, 2003 U.S. Dist. LEXIS 7080 (N.D. Ill. April 25, 2003);  *In re Wright*, 127 B.R. 766 (Bankr. E.D. Pa. 1991);  *Nichols v. Mid-Penn Consumer Discount Co.*, 1989 U.S. Dist. LEXIS 4796 (E.D. Pa. Apr. 28, 1989) (creditor must comply with 15 U.S.C. § 1635 even if loan is already paid off);  *Mayfield v. Vanguard Savings & Loan Ass'n*, 710 F. Supp. 143, 145 (E.D. Pa. 1989) (creditor has no basis for objecting to rescission even if loan already paid off);  *Gill v. Mid-Penn Consumer Discount Co.*, 671 F.Supp. 1021, 1025-26 (E.D. Pa. 1987) (plaintiff entitled to rescind multiple loans even if loans already paid off).
[50]  138 Cal. App. 4th 1342 (Cal. App. 2nd Dist. 2006).
[51]  *Lozo*, 138 Cal. App. 4th at 1347.
[52]  *Id.*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
CERTIFICATION FOR INTERLOCUTORY APPEAL
Case No. C08-01972-JW-HRL

The *Lozo* appellate court overruled the trial court and in the published part of its opinion, declined to follow *King* for several reasons.

> First, apart form the conspicuous lack of analysis in King providing us with little basis for its position, its conclusion is not supported by the language of TILA and Regulation Z. According to Regulation Z, "[i]f the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, [1] upon transfer of all of the consumer's interest in the property, or [2] upon sale of the property, whichever occurs first." (12 C.F.R. § 226.23(a)(3) (2006); see also 15 U.S.C. 1635(f). Absent from that list is payment of the loan. There is no statutory authority for concluding that a refinance terminates the consumer's right to rescind the original loan. . . . Were we to follow King we would be overlooking the fact that something does remain to be rescinded in this case. Under TILA, rescission "does not mean an annulment that is definitively accomplished by unilateral pronouncement, but rather a remedy that restores the status quo ante." (*Quenzer v. Advanta Mortg. Corp. USA* (D. Kan. 2003) 288 B.R. 884, 888. Once borrowers exercise their right to rescind under TILA, their liability for the loan ceases and any security interest given becomes void. (15 U.S.C. § 1635(b)). Procedurally, lenders must return to the borrowers "any money or property given as earnest money, downpayment, or otherwise, and . . . terminat[e the] security interest," and borrowers must tender back to the lenders property, e.g., the loan proceeds, received from the lender.[53]

The *Lozo* court also pointed out that although the decisions of lower federal courts on federal questions are persuasive, they are not binding on state courts, which may independently resolve federal questions when federal courts are split.[54] The *Lozo* court chose to follow the reasoning of the Sixth and Seventh Circuits, stating that the *King* case "has the effect of undermining TILA and the purposes for which TILA was enacted."[55]

### 4.  The Rescission Provisions of the TILA Must Be Construed Liberally in Favor of the Borrower

Predatory lenders are constantly developing new techniques to take advantage of consumer borrowers. The current housing crisis was fueled in part by the widespread use of loan flipping sales techniques and excessive refinancing. This type of predatory lending involves inducing homeowners to

---

[53] *Id*. at 1353.
[54] *Id*. at 1352.
[55] *Id*. at 1355.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
CERTIFICATION FOR INTERLOCUTORY APPEAL
Case No. C08-01972-JW-HRL

repeatedly refinance their homes in short periods of time, each time rolling the fees and costs into the new loan, thereby increasing the principal owed and providing the refinancing team with a quick payout.  When *King v. California* was decided in 1986, loan flipping was not as prevalent a predatory lending strategy as it is today.

In this case, Defendants engaged in a common scheme, facilitated by the same key players, to persuade Mr. Perez to enter into a series of predatory loans without proper disclosures.  Negatively amortizing loans, such as the ones Defendants made and hold in this case, have drained Mr. Perez's home equity, causing his debt to balloon beyond his ability to repay and forcing him into foreclosure.

The TILA is a remedial statute designed to protect consumer borrowers, who are not on an equal footing with creditors, either in bargaining for credit terms or in knowledge of credit provisions.[56]  It was thought that "through TILA, Congress [could] remedy the 'divergent and often fraudulent practices by which credit customers were apprised of the terms of the credit extended to them.'"[57]  "Congress designed the law to apply to all consumers, who are inherently at a disadvantage in loan and credit transactions."[58]

To further this congressional policy the TILA achieves its remedial goals by a system of <u>strict liability</u> in favor of consumers when mandated disclosures have not been made.[59]  The standard applied is considered "strict liability in the sense that absolute compliance is required and even technical violations will form the basis for liability."[60]  The Ninth Circuit Court of Appeals has unequivocally stated that "technical or minor violations of TILA[61], or Reg. Z, as well as major violations impose

---

[56] *King*, 784 F.2d at 916;  *Eby v. Reb Realty*, 495 F.2d 646, 650 (9th Cir. 1974).

[57] *Smith v. Fidelity Consumer Discount Co.*, 898 F.2d 896, 898 (3rd Cir. 1990).

[58] *Jackson v. Grant*, 890 F.2d 118, 122 (9th Cir. 1989);  *Semar v. Platte Valley Fed. Sav. & Loan Ass'n*, 791 F.2d 699, 705 (9th Cir. 1986).

[59] 15 U.S.C. § 1640(a).

[60] *Shepeard v. Quality Siding and Window Factory, Inc.*, 730 F.Supp. 1295, 1299 (D. Del. 1990);  *Clay v. Johnson*, 22 F.Supp.2d 832, 836 (N.D. Ill. 1998);  *In re McElvany*, 98 B.R. 237, 240 (Bankr. W.D. Pa. 1989).

[61] "The error tolerance for finance charges is ten dollars" (Regulation Z § 226.18(d)).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
CERTIFICATION FOR INTERLOCUTORY APPEAL
Case No. C08-01972-JW-HRL

liability on the creditor and entitle the borrower to rescind [the loan]."[62]  Even if the borrower can demonstrate no actual damages, TILA's penalties are applied regardless of whether the borrower was misled or injured.[63]  "To insure that the consumer is protected . . . [the TILA and accompanying regulations must] be absolutely complied with and strictly enforced."[64]  This strict compliance rule is what makes TILA so effective.  "This strict interpretation of the TILA has largely been responsible for the TILA's success in achieving widespread compliance with its requirements."[65]

The TILA and its regulations were created to protect consumers from unscrupulous creditors who fail to provide material disclosures of credit terms.  If the two unsupported sentences in *King* are allowed to remain the law in the Ninth Circuit, all lenders need to do to gut the TILA right of rescission is flip their unlawful loans into new loans.  This would frustrate Congress's intent in providing a three-year window in which consumers can rescind defective home loan transactions.  The TILA should be construed liberally to prevent this unjust and anomalous result.

### D. Appellate Resolution Would Materially Advance the Ultimate Termination of the Litigation

There is no requirement that a question certified pursuant to 28 U.S.C. § 1292(b) be dispositive of the entire action, as long as it "materially affect[s] the outcome of the litigation in district court."[66]  Resolution of this question in favor of Mr. Perez will materially advance the ultimate termination of the litigation by allowing him to litigate all his claims against all parties simultaneously, instead of in a piecemeal fashion.  The affected Defendants are already in this case, represented by counsel and the

---

[62] *Jackson*, 890 F.2d. at 120;  *Semar*, 791 F.2d at 704;  *See also Smith*, 898 F.2d at 898 ("The TILA achieves its remedial goals by a system of strict liability in favor of consumers when mandated disclosures have not been made"); *In re Porter*, 961 F.2d 1066;  *Charles v. Krauss Co., Ltd.*, 572 F.2d 544 (5th Cir. 1978); *Shroder v. Suburban Coastal Corp.*, 729 F.2d 1371, 1380 (11th Cir. 1984).

[63] *See Griggs v. Provident Consumer Discount Co.*, 680 F.2d 927, 932-33 (3rd Cir. 1982), *vacated on other grounds,* 459 U.S. 56, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982);  *See also, In re Ralls v. Bank of New York*, 230 B.R. 508, 517 (E.D. Pa. 1999);  *In re Norris*, 138 B.R. 467 (E.D. Pa. 1992).

[64] *Jackson*, 890 F.2d at 120, *quoting Semar*, 791 F.2d at 704 (brackets in original).

[65] *Brown v. Credithrift of America Consumer Discount Co. (In re Brown)*, 106 B.R. 852, 857 (Bankr. E.D. Pa. 1989).

[66] *In re Cement*, 673 F.2d at 1026.

claims against them are the same as the claims against the other Defendants.

> There are occasions which defy precise delineation or description in which as a practical matter orderly administration is frustrated by the necessity of a waste of precious judicial time while the case grinds through to a final judgment as the sole medium through which to test the correctness of some isolated identifiable point of fact, of law, of substance or procedure, upon which in a realistic way the whole case or defense will turn.  The amendment was to give to the appellate machinery of § 1291 through § 1294 a considerable flexibility operating under the immediate, sole and broad control of Judges so that within reasonable limits disadvantages of piecemeal and final judgment appeals might both be avoided.[67]

In addition, appellate resolution of this very important issue will have broader impact beyond the parties in this case.  As previously stated, the current mortgage foreclosure crisis has in part been caused by loan flipping sales techniques and excessive refinancing of home mortgages.  The restoration of consumer rights to borrowers who were unlawfully enticed into purchasing predatory loan products would allow borrowers to hold lenders accountable, as Congress intended when it passed the TILA.

### IV.  A STAY OF PROCEEDINGS PENDING APPEAL IS WARRANTED

A stay of proceedings pending the requested interlocutory appeal is necessary to preserve the benefits that appellate resolution in Mr. Perez's favor would provide.  Allowing discovery and dispositive motions to move forward while the appellate court is considering a controlling legal issue would be a waste of judicial resources.  "A district court has inherent discretion to control the disposition of the causes on its docket in a manner which will promote economy of time and effort for itself, for counsel, and for litigants."[68]

Furthermore, if Mr. Perez is not permitted to take discovery on all his claims in the case now, and Mr. Perez's dismissed TILA claim is reinstated by a later ruling from the Ninth Circuit, this will result in duplication of discovery efforts.  The delay caused by duplicative discovery would also result

---

[67] *Hadjipateras v. Pacifica, S.A.*, 290 F.2d 697, 703 (5th Cir. 1961).
[68] *Filtrol Corp. v. Kelleher*, 467 F.2d 242, 244 (9th Cir. 1972).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
CERTIFICATION FOR INTERLOCUTORY APPEAL
Case No. C08-01972-JW-HRL

1   in prejudice to Mr. Perez, who is 71 years old, in poor health, and in danger of losing his family home.

2   **V.  CONCLUSION**

3   For the foregoing reasons, Mr. Perez respectfully requests that certification be granted and

4   further proceedings stayed pending appellate resolution.

5

6

7   Dated:  January 16, 2009              /s/ Fred W. Schwinn
                                          Fred W. Schwinn (SBN 225575)
8                                         CONSUMER LAW CENTER, INC.
                                          12 South First Street, Suite 1014
9                                         San Jose, California  95113-2418
                                          Telephone Number: (408) 294-6100
10                                        Facsimile Number: (408) 294-6190
                                          Email Address: fred.schwinn@sjconsumerlaw.com
11

12                                        Sara J. Lipowitz (SBN 209163)
                                          LAW OFFICE OF SARA J. LIPOWITZ
13                                        303 Potrero Street, Suite 27
                                          Santa Cruz, California 95060-2782
14                                        Telephone Number: (831) 427-0546
                                          Facsimile Number: (831) 427-0530
15                                        Email Address: saral@lipowitzsolutions.com

16
                                          Balám O. Letona (SBN 229642)
17                                        LAW OFFICE OF BALÁM O. LETONA, INC.
                                          1347 Pacific Avenue, Suite 203
18                                        Santa Cruz, California 95060-3940
                                          Telephone Number: (831) 421-0200
19                                        Facsimile Number: (831) 621-9659
                                          Email Address: letonalaw@gmail.com
20

21                                        Attorneys for Plaintiff
                                          CARLOS H. PEREZ
22

23

24

25

26

27

28

- 17 -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
CERTIFICATION FOR INTERLOCUTORY APPEAL
Case No. C08-01972-JW-HRL